THE CUMBERLAND COUNTY WELFARE BOARD, A BODY CORPORATE OF THE STATE OF NEW JERSEY, PLAIN-TIFF-APPELLANT, v. GERALDINE M. JORDAN AND DE-PARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 18, 1963—Decided December 6, 1963.

Before Judges GOLDMANN, KILKENNY and COLLESTER.

*Mr. David L. Horuvitz* argued the cause for appellant (*Mr. Bertram R. B. Aitken*, attorney; *Mr. Horuvitz*, of counsel).

Deputy Attorney General *Marilyn H. Loftus* argued the cause for respondent Department of Civil Service (*Mr. Arthur J. Sills*, Attorney General of New Jersey, attorney).

PER CURIAM. This is an appeal by the Cumberland County Welfare Board from a final decision of the Civil Service Commission, setting aside a purported resignation under Civil Service Rule 60 of Geraldine M. Jordan and returning her to the position of Senior Clerk Bookkeeper of the Welfare Board for the purpose of continuing and completing her working test period.

Mrs. Jordan received a temporary appointment to the position in question on September 25, 1961. Thereafter, the Welfare Board appointed her to a permanent status as Senior Clerk Bookkeeper, effective June 21, 1962, "subject to 3 months working test period as per Civil Service regulations." Following this, she began to have severe pains in her right side and consulted a doctor. He suggested hospitalization for tests. With the approval of Charles Land, Director of the Welfare Board, she took an accrued vacation leave from August 6 to August 21, 1962, during which time she was hospitalized. She then took sick leave with pay from August 22 through September 4, 1962.

Mrs. Jordan returned to work on September 5, 1962, but the pain persisted. On September 20, she took sick leave, again with the approval of Mr. Land, and, on the advice of her physician, Dr. Kleinbart, entered Temple University Hospital in Philadelphia the next day.

While at the hospital and realizing that her sick leave would run out on September 28, 1962, Mrs. Jordan wrote a letter on September 27, 1962 to Frank D'Orio, president of the Welfare Board, requesting a further leave of absence without pay for three months, effective October 1, 1962, because of the condition of her health. She enclosed a letter from Dr. Kleinbart, certifying that she was confined at the hospital

"for treatment for Hyperthyroidism" and that she was "not able to work and perform her duties at this time." Consultations at the hospital resulted in a finding that Mrs. Jordan had a bilateral ovarian cyst. On October 4, 1962, she was operated upon at the hospital, a Dr. Haberman performing a bilateral abdominal oophorectomy. She was discharged from the hospital on October 15, 1962 and returned that day to her home in Vineland, New Jersey.

Meanwhile, the Welfare Board had met on October 12, 1962, considered Mrs. Jordan's request for a three months' leave of absence without pay, and denied it on three grounds, to wit: (1) she was merely a temporary employee and could not be granted a leave under *N. J. S. A.* 11:24A–6.1; (2) in the board's judgment she should not be employed as a senior clerk bookkeeper because of her hyperthyroidism; and (3) the board did not want to establish a precedent in this area. In determining the meaning of "hyperthyroidism," the Welfare Board did not consult a medical doctor, but sought information from a dentist and found a definition of the word in some medical book, which described it as "an abnormal nervous condition which borders on the psychic."

Upon her arrival home on October 15, Mrs. Jordan immediately phoned Victor LaTorre, a member of the board in charge of employees, and told him she was home. She testified:

"He said there had been discussion at the Board meeting and Mr. Land told him that the Civil Service Commission would not allow a leave of absence unless I had put in three months as a permanent employee and, therefore, the Board had denied the leave."

She also testified that Mr. LaTorre asked her if she had received a letter which Mr. Land had been instructed to send her the previous week, and she told him she "didn't know anything about such a letter or its contents." Upon finishing her conversation with him she called the Board's office about 4:45 P. M. When there was no answer, she called Mr. Land's secretary, Helen Tribbett, at her home. She told

Mrs. Tribbett that she was home, inquired whether a letter had been sent to her, and was told a letter had not yet been sent.

On October 16, 1962 Mrs. Tribbett informed Mr. Land that Mrs. Jordan had returned home. Mr. Land then dictated a letter in which he advised Mrs. Jordan that the Welfare Board, at its October 12 meeting, "in accordance with Section 11:24A–6.1, Civil Service Laws and Rules for the State of New Jersey, was *unable* to grant your request for a three months leave of absence without pay." (Italics ours) Despite the fact that he knew she was home, Mr. Land directed his secretary to send this letter to Temple University Hospital in care of Dr. Kleinbart with a covering letter to the doctor to deliver it to his patient if he felt it was proper at that time.

When the letter was received in Philadelphia, Dr. Kleinbart was vacationing in Europe and did not see it until he checked his correspondence when he returned on December 6, 1962. Because of the great interval of time which had elapsed, the doctor returned the letter addressed to Mrs. Jordan to the president of the board "so it would be brought to his attention that Mrs. Jordan had not received same."

On October 23, 1962, not having received any letter from the board, Mrs. Jordan wrote the board president. She noted that she had received no answer to her letter of September 27, requesting the three months' leave of absence without pay, told him that she was now feeling well and her doctor had advised that she would be able to assume her full duties on Monday, November 20, 1962. She then stated:

"Inasmuch as I have not heard from the Board, I assume that my request was granted. However, in order to keep my record straight with Civil Service, I would appreciate receiving confirmation of the Board's approval of the approximate 7 weeks' leave without pay that I will have had by the time I am allowed to return to work."

On the same October 23, the board, by Mr. Land, sent the following letter to Mrs. Jordan, addressed to her home in Vineland:

"You having been notified by mail dated Oct. 16th, 1962 that the Cumberland County Welfare Board did not grant your request for leave of absence with out pay effective Oct. 1, 1962, are held to have resigned from the Cumberland County Welfare Board staff effective October 23rd, 1962 as per the provisions of Rule #60 The Civil Service Law and Rules for the State of New Jersey. (State, Counties, Municipalities and School Districts)."

She received this letter. On October 30, 1962 she also received an envelope containing copies of several letters without any covering letter.

Mrs. Jordan did not report for work or communicate with the Welfare Board after it had advised her of its holding that she had resigned as per the provisions of Rule No. 60. Instead, she took an appeal to the Civil Service Commission with the result first noted above.

The Commission found that the Welfare Board had a duty to properly notify Mrs. Jordan of its refusal to grant her the requested leave of absence without pay and that it had breached this duty. It also found from the evidence that Mrs. Jordan had endeavored by all reasonable means to protect her "job rights" during her illness and was not "desirous of resigning her position." It concluded that Rule 60 cannot be applied here.

The Welfare Board contends that Civil Service Rule 60 mandated it to treat Mrs. Jordan's failure to return to duty within five days after the expiration of her authorized leave of absence as a resignation not in good standing. Rule 60 provides:

"Any employee who is absent from duty for five consecutive business days without notice to his superior officer of the reason for such absence and the time when he expects to return and without securing permission to be on leave from his superior officer, or who fails to report for duty within five business days after the expiration of any authorized leave of absence shall be held to have resigned. Such resignation shall be treated as a resignation not in good standing and the appointing authority shall so report it to the chief examiner and secretary."

It is undisputed that Mrs. Jordan's authorized leave expired on September 28, 1962 and that she did not report for

duty within five business days thereafter, *i. e.,* by October 8, 1962. From these admitted facts the Welfare Board argues that the word "shall" in Rule 60 made it mandatory upon the board to treat her absence as a resignation and precluded the Civil Service Commission from disregarding its own rule or exercising any discretion in the matter.

Adherence to the strict letter of the rule supports the board's argument. But the spirit and intent of the rule do not justify such a conclusion. Were we to adopt the board's position, a most faithful civil service employee who had devoted many years in the public service could be held to have resigned, and not in good standing, by his mere failure to report for duty within five business days after expiration of an authorized leave of absence, no matter how valid the reason might be for his continued absence and no matter how arbitrary the denial of his request for a reasonable extension of his leave. An example that comes readily to mind is that of an employee seriously injured in an accident while on authorized vacation leave far from home, and who is taken to an area hospital where he remains in a coma for an extended period of time.

 We are satisfied that Rule 60 was intended to cover unwarranted and unjustifiable absences or those undertaken "without notice" of the reason for such absence and of the time when the employee expects to return. Compare *McLaughlin v. New Jersey Civil Service Commission,* 137 *N. J. L.* 338 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 284 (1949), upholding the Commission's determination that the employee had resigned upon its finding that the claimed illness was not *bona fide.* Here, Mrs. Jordan was unquestionably ill.

 The Welfare Board had full knowledge and notice of the reason for Mrs. Jordan's absence from work and of the time when she expected to return. It knew that she was confined to a hospital under medical care and not presently physically able to perform her duties. Her request for extension of leave was supported by a doctor's certificate. Her

conduct and the circumstances negated any inference that she had resigned within the intendment of Rule 60. The board had given her an official leave of absence for health reasons. She made application for its extension. If the board's interpretation of Rule 60 is correct, she had resigned on October 8, 1962 even before the board passed on her request for the extension on October 12.

The board's denial of the requested extension of leave was grounded upon a mistake of law and a mistake of fact. It advised Mrs. Jordan that it was "unable" to grant the leave on the mistaken notion that she was only a temporary employee. Yet it had appointed her to permanent status, effective June 21, 1962, subject to the three months' working test period. The Civil Service Commission regards such an appointee as having permanent rights and not removable during the working test period without a hearing. The board gave her no such hearing. The board also mistakenly regarded Mrs. Jordan's condition of hyperthyroidism as rendering her physically incapable of performing her duties on its *ex parte* consultation with a dentist and examination of a "medical book." It knew nothing of the nature and extent of her condition or the remedial effect of Dr. Kleinbart's treatment. It labored under the mistaken belief that her thyroid gland condition necessarily implied an abnormal nervousness bordering on the psychic and that her hospital confinement was solely attributable thereto. It seemingly lacked the knowledge of her operation and the need for post-operative care.

The action of Mr. Land in sending a letter to Philadelphia in care of Dr. Kleinbart, when he knew she was at her Vineland home, constituted an unwarranted assumption on his part and denied Mrs. Jordan timely official notice of the board's denial of her request for a leave. It then notified her that she had "resigned" even before it had notified her formally that it was unable to grant her request for a leave under *N. J. S. A.* 11:24A–6.1 and the Civil Service rules.

*N. J. S. A.* 11:24A–6.1 and Civil Service Rule 55(e) provide that a permanent employee holding a position in the

classified service who is temporarily physically incapacitated to perform his duties *may* be granted a leave of absence for a period not exceeding six months. While the granting of the leave is discretionary, the Civil Service Commission may review the appointing authority's decision to determine whether or not there was an abuse of discretion. *N. J. S. A* 11:2A–1; *R. S.* 11:15–6; *N. J. S. A.* 11:5–1(d). The Welfare Board's declaration that it was "unable" to grant the leave and its further reasons for not granting it were erroneously grounded upon a misunderstanding of the law and facts. The denial of the request constituted an abuse of discretion under all of the circumstances of this case.

We recognize the special expertise of the Civil Service Commission in matters of this kind and that its factual findings may not be disregarded by the courts where there is substantial evidence supporting them. *Campbell v. Department of Civil Service,* 39 *N. J.* 556 (1963). We find no sound basis in law or in fact for disturbing the conclusion reached by the Civil Service Commission.

The judgment is affirmed.